## Case No. 4,121.

### DUGAN v. PENTZ et al.

[2 Hughes. 66;[1] 1 Balt. Law Trans. 196; 1 Chi. Leg. News, 225; 16 Pittsb. Leg. J. 326; 1 Leg. Gaz. 22.]

District Court, D. Maryland. March, 1869.

ADMIRALTY — LIBEL IN PERSONAM FOR REPAIRS AND SUPPLIES — MORTGAGEE REGISTERED AS OWNER.

On a libel in personam in admiralty against two owners, where it was proved that one of the owners was in fact but a mortgagee of part of a vessel, though registered as an owner, and was not publicly known as owner, and credit for repairs and supplies was not given on the ground of his partnership, and he had no ostensible connection with the vessel, the libel was dismissed with costs as to that owner.

This libel [in personam] was filed to recover the value of repairs to the boilers and machinery of the steamer Massachusetts, made by the libellant in the years 1866 and 1867. The libel states that it is filed against defendants, as the owners of the said steamer, for repairs to said steamer in the years 1866 and 1867, which repairs were made at the request of the master of the said steamer. To this libel no answer has been filed by Samuel J. Pentz, but John W. D. Pentz has filed an answer, in which he states that in the years 1866 and 1867 the said boat was in the exclusive possession of Samuel J. Pentz, the then half owner, as the owner pro hac vice, and was subject to his exclusive control and management; and that Samuel J. Pentz, without permission from or consultation with this respondent, appointed the captain of said boat, and that he, John W. D. Pentz, was never in possession of said boat, and had nothing to do with its management or business, and that he never gave any authority to either the said Samuel J. Pentz or to the captain of the said boat, to run the said boat for hire, or to contract any debts for him, or on his account, or in his name, for or on account of the said boat. On the trial of this case Samuel J. Pentz testified that in 1866, and before the work was done by the libellant on said steamer, he (witness) being the owner of said steamer, and being indebted to his brother, John W. D. Pentz, in the sum of four thousand dollars, to secure said debt to his brother, executed and delivered to him an absolute bill of sale for one-half of said steamer, which was duly recorded in the custom-house at this port, and the registry surrendered, and a new registry taken out in their joint names as owners. That in June, 1867, John

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

W. D. Pentz united with him in a mortgage of said steamer to the Oldtown Savings Institution, to secure to said institution the payment of $20,000 due to it by him, the said Samuel J. Pentz. That he (witness) never told libellant that his brother had an interest in said steamer, but that he.(witness) had the sole control and management of said steamer, and that it was run on his account; and John W. D. Pentz also testified that he had no dealings with libellant, that he was never in possession of said steamer, never appointed any of her officers, never had any control over said boat, and never received any of its freight or passenger-money. Also that the bill of sale was made to him by his brother, Samuel J. Pentz, to secure to him the sum of $4000 which his brother owed him, no part of which sum has ever been paid by him. It was also proved that the repairs stated in the·libel were made to said steamer by the libellant, that they were necessary to enable said steamer to resume her trips, and that when said work was done the bill was presented to Samuel J. Pentz, who said the bill was right and should be paid.

J. B. Seth, for libellant.
J. Carson, for respondent.

GILES, District Judge. Upon these facts I am called upon to decide whether they show a case in which John W. D. Pentz is liable as owner of said steamer for repairs, made by the request and direction of her master. There is no evidence in this case that the libellant made the repairs on the credit of the said John W. D. Pentz, or, indeed, that he (libellant) knew when he made said repairs that John W. D. Pentz held the legal title to a moiety of said vessel, or that she was registered in his and Samuel J. Pentz's names.

Now it has been repeatedly decided, that although the conveyance of the vessel to the defendant be absolute on its face, yet even in a controversy between defendant and third parties, defendant can show that it was made to him merely to secure the payment of money due him. The evidence in this case shows conclusively that such was the character of the bill of sale executed by Samuel J. Pentz to John W. D. Pentz. John W. D. Pentz being then only the mortgagee of a moiety of said steamer, and never having taken possession, or united in the control of her, or received any of her earnings, is responsible as owner because of said absolute conveyance and registry in his name?

Now how stands this question on principle? Why is an owner responsible for repairs to a vessel? Clearly because the captain is his agent, and whatever he does within the scope of his agency binds his principal. And whenever a case is shown in which the captain is proved not to have been the agent of the general owners, you show a case in which the general owners are not

responsible. Such cases frequently occur where the vessel has been chartered and the charterer is held to be the owner pro hac vice. And no injustice is done by the adoption of this principle. For in the home port, if the material-man wishes to learn who is the owner responsible for the repairs, he can always obtain the information upon proper inquiry; and if the repairs are made in a foreign port, and are necessary and proper, and the captain ordering them has no funds of his owner to meet the same. the vessel itself is liable, unless it appears that they could be made there·upon the credit of the real owner. As the captain of the Massachusetts was in no sense the agent of John W. D. Pentz, I hold that he is not responsible for the repairs of the said steamer. I am aware there has been much conflict of authority on this subject, and that it has been held by learned courts that where a party holds himself out to the world, by the title-papers, as the legal owner of the vessel, and she stands registered in his name, and the material-man who repairs her has no knowledge to the contrary, such party will be responsible as owner, although he may hold the legal title to secure him for money loaned. Such was the case of Tucker v. Buffington, 15 Mass. 479. Also the cases of Lord v. Ferguson, 9 N. H. 380, Ex parte Machel, 1 Rose, 447, and Starr v. Knox, 2 Conn. 215. But in the first-named case the party not only held an absolute bill of sale, but had taken out a new certificate of enrolment in his own name, and had erased from the stern of the vessel the name of the place of residence of the former owner, and substituted his own place of residence. And in the case in Connecticut the court was much divided, four judges holding the party liable as owner, and two holding him not responsible. The tendency of the later decisions has been to hold that the owner who is responsible is the person who, having some kind of claim or title, has the control and management of the vessel, and has the right to receive her freight and earnings. This doctrine has been sustained in the following cases: Duff v. Bayard, 4 Watts & S. 240: Blanchard v. Feaning, 4 Allen, 118 (in 1862); Howard v. Odell, 1 Allen, 85; Ring v. Franklin, 2 Hall, 19; Birkbeck v. Tucker, Id. 121; Macy v. Wheeler, 30 N. Y. 231 (in 1864); Myers v. Willis, 33 Eng. Law & Eq. 204 (afterwards confirmed in the exchequer and reported in 36 Eng. Law & Eq. 350).

There being in this case no proof of any authority in the master or other part owner to bind John W. D. Pentz, no such authority is implied from the facts that he is the registered owner of a moiety of said steamer, and that the conveyance to him is an absolute bill of sale. He held the vessel only as security, never took possession, and never, as I have before stated, exercised any control over her, or received any benefit from her earnings. The material-man under these cir-

cumstances had no right to rely on his credit. The true question is, who was the contracting party? The legal and record title does not of itself decide the question of liability for supplies or repairs to a registered vessel. The question is, as I have said, to whom is the credit given? and in the absence of proof of any special credit, the law adjudges it to have been given to the person in actual possession of the vessel, who controls her operations, receives her freight, and directs her destination. The contract in this case was made by the captain who was appointed by and is therefore the agent of Samuel J. Pentz. It is therefore Samuel J. Pentz's contract, and he alone in this action is responsible. I will therefore sign a decree dismissing this libel as to John W. D. Pentz, and give a decree against Samuel J. Pentz for the claim of the libellant with costs.